# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

SHANNON FLEMING,

      Plaintiffs,

v.                                CASE NO.  4:13cv139-RH/CAS

THE FLORIDA BAR,

      Defendant.

_____/

## ORDER GRANTING SUMMARY JUDGMENT

This is an employment-discrimination case.  The plaintiff claims she was denied two promotions—in 2011 and 2012—because of her race.  The defendant has moved for summary judgment.  This order grants the motion.  The 2011 claim fails because the plaintiff did not file an administrative charge on that claim and, alternatively, because the plaintiff has not rebutted the defendant's legitimate nondiscriminatory reasons for choosing a different applicant.  The 2012 claim fails because the plaintiff has not rebutted the defendant's legitimate nondiscriminatory reasons for choosing a different applicant.

# I

The plaintiff Shannon Fleming is an attorney. She became an employee of the defendant, The Florida Bar, in 2001. She worked in the Attorney Consumer Assistance Program ("ACAP") as a Senior Attorney. At the time, ACAP ran a hotline helping clients resolve grievances with their attorneys prior to the filing of a formal bar complaint. If the matter could not be handled informally and required further action—for example, an investigation into whether to proceed with a formal bar complaint—investigators in the Bar's branch offices handled the matter.

ACAP was one of several units within the Legal Division. Most of the units had Directors; ACAP did not. In 2003, Ms. Fleming was designated Lead Attorney of ACAP. The position came with a small raise and gave Ms. Fleming supervisory responsibilities. At the time, the Lead Attorney position was the highest-ranking position in ACAP.

In 2006, the Director of the Legal Division, Tony Boggs, became too ill to continue in that role. The Bar created a Director position in ACAP and allowed Mr. Boggs to continue working in this reduced capacity. John Berry replaced Mr. Boggs as Director of the Legal Division.

Later in 2006 or early in 2007, Mr. Boggs left his position as Director of ACAP. Ms. Fleming applied to replace him. Mr. Berry conducted interviews and selected Donald Spangler, who is white, over Ms. Fleming, who is African

American.  Mr. Spangler had supervised attorney-discipline investigations at the Tallahassee branch office.  Mr. Berry wanted to consolidate the initial-investigation process then conducted at the branch offices—known as intake—into ACAP.  After Mr. Spangler became Director of ACAP, the intake process was in fact moved into ACAP.  Ms. Fleming does not assert a claim in this action based on Mr. Spangler's selection for this position.

In late 2007, the Center for Professionalism, a different unit within the Legal Division, advertised for an Assistant Director.  Ms. Fleming applied for and received the position, starting in January 2008.

The Director of the Center for Professionalism—Ms. Fleming's new boss—was Carl Zahner.  Ms. Fleming says that almost immediately upon her arrival, Mr. Zahner created a hostile environment.  Mr. Zahner told the staff that he was forced to hire Ms. Fleming but that he preferred another candidate.  Mr. Zahner, who is white, often made comments that Ms. Fleming found inappropriate.  He said he and Ms. Fleming had "cultural differences."  When Ms. Fleming was ill after attending the 2009 presidential inauguration, Mr. Zahner asked whether she had the "Obama flu."  Mr. Zahner excluded Ms. Fleming from meetings and limited the work she was assigned.

In August 2008, the position of Director of ACAP came open again.  Ms. Fleming applied.  Mr. Berry and Mr. Spangler conducted interviews.  They

selected Arne Vanstrum, who is part Caucasian and part Asian. Mr. Vanstrum had worked in ACAP with Mr. Spangler for several months, and previously they had worked together at the Tallahassee branch office. Ms. Fleming does not assert a claim in this action based on Mr. Vanstrum's selection for this position.

Meanwhile, Mr. Zahner's hostile treatment of Ms. Fleming continued. In May 2011, Ms. Fleming filed a grievance in the Bar's internal system, alleging harassment, racial discrimination, abuse of power, and a hostile environment. Ms. Fleming says she would have filed the grievance sooner but feared retaliation. The Bar's human-relations director, together with a director from an unrelated division, investigated and concluded that Mr. Zahner had created a hostile environment involving "tension, mistrust and lack of communication," and had made comments that "may offend individuals or be perceived as discriminatory." ECF No. 24-15 at 7. The investigators concluded that there was no harassment, abuse of power, or racial discrimination.

The investigators recommended that Ms. Fleming be given an opportunity— but not required—to transfer to another, equivalent position. Ms. Fleming chose to become the Assistant Director of the Florida Registered Paralegal Program. The Paralegal Program is part of a different department and division, not within Mr. Zahner's or Mr. Berry's chain of command. Ms. Fleming remains in this position today.

The investigators also recommended that Mr. Zahner receive counseling and a written reprimand.  Mr. Zahner elected to retire and asked the Bar not to place the reprimand in his file.  The Bar agreed.

In December 2011, the Bar advertised for Mr. Zahner's replacement as Director of the Center for Professionalism.  Ms. Fleming applied.  Mr. Berry conducted her interview.  Mr. Berry and Mr. Zahner together conducted the interviews of several other candidates.  Linda Calvert Hanson, who is white, was selected.  At the time of her selection, Ms. Calvert Hanson was the Dean of Bar Success and Professionalism at the University of Florida College of Law.  Ms. Fleming's first claim in this lawsuit is that race was a substantial motivating factor in this decision.

Mr. Berry testified that he alone selected Ms. Calvert Hanson, subject to the routine approval of the Bar's Executive Director.  But Mr. Zahner was involved— he wrote several questions that were asked in interviews other than Ms. Fleming's, participated in the other interviews, talked with Mr. Berry about the candidates, spoke with at least one of Ms. Calvert Hanson's references, and recommended that Ms. Calvert Hanson be selected.

After not receiving the promotion to Director of the Center for Professionalism, Ms. Fleming applied again to be Director of ACAP.  The position was open because Mr. Vanstrum was promoted to a higher position.  Mr. Berry and

Mr. Vanstrum interviewed Ms. Fleming and several other candidates.  Mr. Berry

selected Shanell Schuyler, who is white, in early 2012.  Ms. Schuyler had worked

with Mr. Vanstrum in ACAP for five years, the last two as the Lead Attorney, and

Mr. Vanstrum believed Ms. Schuyler performed best in the interviews.  Ms.

Fleming's second claim in this lawsuit is that race was a substantial motivating

factor in this decision.

## II

Ms. Fleming filed with the Equal Employment Opportunity Commission and

Florida Commission on Human Relations a timely charge of racial discrimination.

Ms. Fleming cited the 2012 denial of a promotion to Director of ACAP.  She did

not mention the 2011 denial of a promotion to Director of the Center for

Professionalism.  Except for that omission, Ms. Fleming properly exhausted her

administrative remedies for the claims she now asserts in this lawsuit.

## III

Ms. Fleming filed this lawsuit in February 2013.  She alleged racial

discrimination in connection with the 2012 denial of a promotion to Director of

ACAP.  In April 2013, Ms. Fleming amended her complaint to add a claim of

racial discrimination in connection with the 2011 denial of a promotion to Director

of the Center for Professionalism.  Ms. Fleming does not assert a hostile-

environment claim.  *See* ECF No. 20-1 at 8.

Ms. Fleming asserts the claims under Title VII of the Civil Rights Act of 1964, as amended, and the Florida Civil Rights Act.

The Bar has moved for summary judgment based on failure to exhaust administrative remedies on the 2011 claim and based on the merits of both claims. The Eleventh Circuit has said that exhaustion is a matter in abatement properly raised by a motion to dismiss, and that when raised by a motion for summary judgment, the issue should be treated as if raised by a motion to dismiss. *See Tillery v. U.S. Dep't of Homeland Sec.*, 402 F. App'x 421, 424 (11th Cir. 2010); *Bryant v. Rich*, 530 F.3d 1368, 1375-76 (11th Cir. 2008). The label makes no difference here. The issues have been properly joined.

## IV

Before filing a lawsuit under Title VII or the Florida Civil Rights Act, an employee must exhaust administrative remedies. The first step is filing a charge with the EEOC or FCHR. The exhaustion requirement exists so that the EEOC or FCHR has " 'the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts.' " *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004) (quoting *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983)). Unless an employer waives the exhaustion

requirement, an employee cannot prevail on a claim that the employee did not
properly exhaust.

An employee's claims in court are limited by the scope of the administrative
investigation that can "reasonably be expected to grow out of the charge of
discrimination." *Alexander v. Fulton Cnty., Ga.*, 207 F. 3d 1303, 1332 (11th Cir.
2000), *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304, 1328 n.52
(11th Cir. 2003) (citation omitted). Claims in court may " 'amplify, clarify, or
more clearly focus' the allegations in the EEOC complaint," but "new acts of
discrimination are inappropriate." *Gregory*, 355 F.3d at 1279-80 (quoting *Wu v.
Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989)).

"[E]ach instance of failure to promote or refusal to hire is a discrete act of
discrimination that constitutes a 'separate actionable unlawful employment
practice.' " *See Haugabrook v. Cason*, 518 F. App'x 803, 809 (11th Cir. 2013)
(citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)); *see also
EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271-72 (same).

Here Ms. Fleming's administrative charge cited the 2012 denial of a
promotion to Director of ACAP but did not mention the 2011 denial of a
promotion to Director of the Center for Professionalism. The scope of the
administrative investigation that reasonably could be expected to grow out of this
charge did not include the 2011decision. That was a different hiring decision for a

different position needing a different skill set in a different unit that involved

different candidates.  Because the 2011 decision was a separately actionable

allegedly unlawful employment practice, Ms. Fleming was required to

administratively exhaust it.  Her claim in court challenging that decision is barred.

 The result would be the same even if Ms. Fleming was a lay person who was

not represented by an attorney in the administrative process.  It bears noting,

though, that Ms. Fleming cannot claim the extra leniency sometimes afforded an

unrepresented employee.  Ms. Fleming is herself an attorney.  And the EEOC

charge bears the name of another attorney who apparently represented Ms.

Fleming in that process.  Had Ms. Fleming believed she suffered discrimination in

connection with the 2011 denial of a promotion to Director of the Center for

Professionalism, Ms. Fleming easily could have said so in the administrative

charge.

 The failure to exhaust is sufficient, standing alone, to entitle the Bar to

judgment on the 2011 claim.  An alternative basis for dismissing that claim, as set

out below, is that the claim is unfounded on the merits.

V

 To prevail on the portion of the summary-judgment motion that addresses

the merits, the Bar must show "that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes in the evidence must be resolved, and all reasonable inferences from the evidence must be drawn, in favor of Ms. Fleming, as the nonmoving party.

When, as here, an employee relies on circumstantial evidence in support of a discrimination claim, the employee may proceed under the familiar burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later cases. Under that framework, an employee first must present a prima facie case. The employer then must proffer a legitimate nondiscriminatory reason for its decision. The employee then must show that the proffered reason was not the real reason for the decision and that instead a reason was discrimination. Alternatively, the employee may present other evidence from which a reasonable factfinder could infer prohibited discrimination. *See*, *e.g.*, *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).

For a failure-to-hire or failure-to-promote claim, the elements of a prima facie case are that the plaintiff was a member of a protected class, the plaintiff applied and was qualified for the position, the plaintiff was rejected, and either the position remained open or the successful applicant was not a member of the protected class. *See Walker v. Mortham*, 158 F.3d 1177 (11th Cir. 1998). The Bar says another part of a prima facie case is that the successful applicant was equally or less qualified than the plaintiff, but as *Walker* squarely holds, that is *not* part of a

prima facie case. *Walker*'s result would be correct as an original matter and, as importantly, accords with the Eleventh Circuit's ironclad prior-panel rule, all as set out in *Walker* itself.

To be sure, Eleventh Circuit cases can be cited on both sides of this issue. That was the problem *Walker* addressed and should have resolved, but the problem has persisted. *Compare, e.g.*, *Giles v. BellSouth Telecomms., Inc.*, No. 13-10145, 2013 WL 5486229, at *3 (11th Cir. Oct. 3, 2013) (stating that an element of a prima facie case is that an equally or less-qualified employee outside the protected class was promoted), *and Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1174 (11th Cir. 2010) (same), *with, e.g.*, *Aristyld v. City of Lauderhill*, No. 13-12235, 2013 WL 5735159, at *2 (11th Cir. Oct. 23, 2013) (not including this as an element of a prima facie case), *and Vessels v. Atl. Indep. Sch. Sys.*, 408 F.3d 763, 768 (11th Cir. 2005) (listing as this element of a prima facie case only that "an individual outside [the] protected class was promoted"). Despite the confusion, the law of the circuit is accurately set out in *Walker*.

## VI

Ms. Fleming has established a prima facie case for both positions at issue—the 2011 opening for Director of the Center for Professionalism and the 2012 opening for Director of ACAP. She applied for the positions. She was qualified.

She is African American.  The successful applicants are not.  Nothing more is required.

VII

The Bar's proffered legitimate nondiscriminatory reasons for selecting Ms. Calvert Hanson over Ms. Fleming in 2011 as Director of the Center for Professionalism begin with the differences in their experience.  Ms. Calvert Hanson was the Dean of Bar Success and Professionalism at the University of Florida College of Law.  She had significant experience in professionalism education, she had worked with administrators at the state's law schools on a variety of programs and had well-established contacts at the schools, she had experience preparing educational material, she was passionate about professionalism education and aware of literature in the field, she had served in a leadership role on a Bar committee and had experience communicating with the Florida Bar Board of Governors, and she had been a supervisor.  She was well recommended and performed well in her interview.

Ms. Fleming says that her experience in the Center for Professionalism should outweigh Ms. Calvert Hanson's experience as a Dean at the University of Florida College of Law.  And Ms. Fleming takes issue with the Bar's weighing of other factors.  But it is obvious and undisputed that Ms. Calvert Hanson and Ms. Fleming had substantially different experience.  Being the Dean of Bar Success

and Professionalism at one of the state's top law schools is an impressive

credential—one that the Bar had every right to assign substantial weight. This is

plainly a credential that "might motivate a reasonable employer." *Chapman v. A1*

*Transp.*, 229 F.3d 1012, 1031 (11th Cir. 2000).

Comparing Ms. Calvert Hanson's experience at the College of Law with Ms.

Fleming's experience at the Bar was the prerogative of the Bar, not an issue for *de*

*novo* review by a federal judge or jury. So long as the Bar made its decision

without regard to race, the wisdom of the decision cannot be second-guessed here.

"A plaintiff cannot establish pretext merely by showing he or she was better

qualified than the hired candidate; the plaintiff must show the hiring decision was

made because of an illegal motive." *Hillemann v. Univ. of Cent. Fla.*, 167 F.

App'x 747, 750 (11th Cir. 2006) (citing *Alexander*, 207 F.3d at 1339). Ms.

Fleming has not shown any "weaknesses, implausibilities, inconsistencies,

incoherencies, or contradictions" in the Bar's legitimate nondiscriminatory reasons

for selecting Ms. Calvert Hanson. *See Combs v. Plantation Patterns,* 106 F.3d

1519, 1538 (11th Cir. 1997).

On this record, a reasonable jury could not find that the Bar's proffered

legitimate nondiscriminatory reasons for selecting Ms. Calvert Hanson were

pretextual. There is absolutely no evidence that race had anything to do with it.

There is absolutely no basis for any contrary inference. So even if Ms. Fleming

had preserved this claim by filing an administrative charge—she did not—the Bar still would be entitled to summary judgment.

That Mr. Zahner had some involvement in the hiring process does not change this conclusion. The record would support a finding that Mr. Zahner treated Ms. Fleming shabbily. But the Bar did not endorse this treatment; to the contrary, the Bar's investigators recommended that Mr. Zahner be disciplined, and he avoided that result only by agreeing to retire. Nothing but weak inferences from ambiguous comments give the slightest support for any assertion that Mr. Zahner's treatment of Ms. Fleming was motivated by race. And more importantly, Mr. Zahner did not make the hiring decision at issue; Mr. Berry did. There is no evidence that Mr. Berry mistreated Ms. Fleming at any time in any respect. There is no evidence that race motivated Mr. Berry at any time in any respect. And there is no basis for any inference that Ms. Calvert Hanson was selected based on anything other than the Bar's proffered legitimate nondiscriminatory reasons. Race had nothing to do with it.

## VIII

The Bar's proffered legitimate nondiscriminatory reasons for selecting Ms. Schuyler over Ms. Fleming in 2012 as Director of ACAP again start with the differences in experience. Both had served as Lead Attorney in ACAP, but Ms. Schuyler was currently serving in that position. Ms. Fleming had served in the

position before the intake process was fully incorporated into ACAP. In addition, Ms. Schuyler had more than 10 years' experience in private practice including a stint as a partner in a small firm—experience deemed helpful when evaluating complaints about attorneys in private practice. Ms. Schuyler had a good leadership style and interacted well with other employees.

Ms. Fleming takes issue with the Bar's analysis of these factors. Ms. Fleming says the intake process added quantity but did not affect quality. Ms. Fleming says she had more responsibility when she was the Lead Attorney because at that time ACAP had no Director; during Ms. Schuyler's tenure, there was a Director. And Ms. Fleming says her experience working for two state agencies for four years is equivalent to Ms. Schuyler's experience of more than a decade in private practice. These are all disagreements with the Bar's business judgment, not evidence that the Bar was motivated by race.

It bears noting, too, that Mr. Zahner had nothing to do with this decision. Mr. Berry and Mr. Vanstrum interviewed the candidates. Mr. Berry alone selected Ms. Schuyler, who had Mr. Vanstrum's recommendation. Ms. Fleming has pointed to nothing that casts the slightest doubt on the validity of the Bar's proffered legitimate nondiscriminatory reasons for this decision. The Bar is entitled to summary judgment on this claim.

IX

For these reasons,

IT IS ORDERED:

The Florida Bar's summary-judgment motion, ECF No. 19, is GRANTED.

The clerk must enter a judgment dismissing the plaintiff's claims with prejudice.

The clerk must close the file.

SO ORDERED on January 16, 2014.

s/Robert L. Hinkle
United States District Judge